UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| FRANK R.[1], | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  3:20cv315 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for  Disability

Insurance Benefits (DIB), as provided for in the Social Security Act. 42 U.S.C. § 423(a), §

1382c(a)(3).  Section 405(g) of the Act provides, inter alia, "[a]s part of his answer, the

[Commissioner] shall file a certified copy of the transcript of the record including the evidence

upon which the findings and decision complained of are based.  The court shall have the power to

enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or

reversing the decision of the [Commissioner], with or without remanding the case for a

rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by

substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to last for a continuous period of not less

than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental

---

[1]  To protect privacy, Plaintiff's full name will not be used in this Order.

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings. *Scott v. Astrue*, 734, 739 (7th Cir. 2011); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see also Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.    The claimant last met the insured status requirements of the Social Security Act on December 31, 2018.

2.      The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 22, 2011 through his date last insured of December 31, 2018 (20 CFR 404.1571 *et seq*.).

3.      Through the date last insured the claimant had the following severe impairments: asthma, disorders of the shoulder including bursitis and rotator cuff tear, tendinopathy of the right biceps tendon, osteoarthritis, and below the knee amputation of the right lower extremity (20 CFR 404.1520(c)).

4.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) as the claimant was able to lift and or carry 20 pounds occasionally and 10 pounds frequently and sit, stand and/or walk for six hours in an eight hour workday, except: the claimant was unable to climb ladders, ropes or scaffolds, balance, kneel, crawl or operate foot controls with the bilateral lower extremities, could occasionally climb ramps or stairs, stoop, crouch or reach overhead with the right dominant upper extremity, could frequently reach in all other directions with the right upper extremity, and needed to avoid concentrated exposure to extreme temperatures, humidity, pulmonary irritants such as dust, fumes and gasses, and to hazards such as unprotected heights, wet/slippery surfaces, and dangerous moving machinery.

6.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on November 2, 1965 and was 53 years old, which is defined as a younger individual age 18-49 [sic][2], on the date last insured (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills

---

[2] Clearly, Plaintiff is over the age of 49 and not a "younger individual" but, rather, a person "closely approaching advanced age". 20 CFR 404.1563(d).

(See SSR 82-41 and 20 CFR Par 404, Subpart P, Appendix 2).

10.    Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11.    The claimant was not under a disability, as defined in the Social Security Act, at any time from November 22, 2011, the alleged onset date, through December 31, 2018, the date last insured (20 CFR 404.1520(g)).

(Tr. 27 - 35).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on November 12, 2020. On December 22, 2020, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on January 22, 2021. Upon full review of the record in this cause, this court is of the view that the ALJ's decision must be remanded.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not

4

disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In 2011 Plaintiff developed a right foot infection and osteomyelitis (bone infection) which led to a below knee amputation of his right leg. (AR 356.) His prosthesis was uncomfortable and rubbed his leg and back of his knee, causing abrasions and sores. Pain was worse when walking. (AR 343.) He wanted to get a new prosthetic sleeve, but could not afford it and either had no insurance or it was not covered. He had pain in his stump. Pain affected his daily activities, his ability to walk (AR 352), and his sleep (AR 360). He was diagnosed with a history of right below knee amputation and stump pain. Plaintiff's doctor questioned if some of Plaintiff's stump pain could be attributed to "phantom pain." (AR 331.) Plaintiff also reported back pain due to the way he was walking while compensating for the sore on his right leg. (AR 339.) He has reported ankle pain for the same reason. (AR 316.) On March 14, 2016, Plaintiff's treating doctor, Dr. Achufusi, indicated Plaintiff had undergone a right below knee amputation which had rendered him permanently incapacitated, since November 23, 2011. (AR 287.)

In February 2016, Plaintiff injured his right shoulder. (AR 343.) Since then, he has reported pain in his right shoulder. His shoulder popped and cracked at times. (AR 310.) He sometimes could not raise his right arm. (*Id*.) Pain was worse with use. (AR 465; 467.) It affected his activity level. (AR 310.) It affected his sleep. (AR 299.) During examinations his right shoulder was tender, with crepitus. (AR 314.) He had reduced abduction of the shoulder. He had reduced strength with abduction, due to pain (AR 466; 468.) He had positive impingement tests and

5

positive reinforcement tests. (*Id*.) X-rays showed subacromial spurring. (AR 466.) On April 18, 2017, an MRI of Plaintiff's right shoulder revealed: a large, full thickness, rotator cuff tear involving the supraspinatus muscle with proximal retraction of the tendon and mild fatty infiltration and atrophy of the rotator cuff muscles; Os acromiale; and severe tendinopathy involving the long head of the biceps tendon. (AR 472.) Plaintiff has been diagnosed with right shoulder pain, osteoarthritis of the right shoulder (AR 309; 486), subacromial bursitis (AR 466; 468), right complete tear of the rotator cuff (*Id*.) He was given cortisone and depo-medrol injections, in his right shoulder. He was referred to pain management (AR 285; 297) and to an orthopedic surgeon (AR 286) for evaluation of his right shoulder pain. After examining Plaintiff and obtaining an x-ray and MRI of Plaintiff's right shoulder, the orthopedic surgeon recommended shoulder replacement. (AR 468.) However, Plaintiff wanted to hold off on surgery and try corticosteroid injections. (AR 292; 468.) Plaintiff testified he did not want to get shoulder surgery because he could not fend for himself and had no one to help him. (AR 64.) Plaintiff has also reported left shoulder pain. He was diagnosed with left shoulder pain (AR 335; 342) and osteoarthritis of the left shoulder (AR 316). He was given a cortisone injection in his left shoulder. (*Id.*)

For Plaintiff's stump/prosthesis pain, phantom pain, and bilateral shoulder pain, he has been prescribed: Norco; Naproxen; Flexeril; and Tramadol (AR 298-99).

Plaintiff has also been diagnosed with asthma and wheezing (AR 347). He has reported feeling short of breath, trouble breathing, and wheezing. (AR 360; 477.) He was prescribed an albuterol inhaler, Ventolin inhaler (AR 561), a Symbicort inhaler, and given an at home nebulizer. He was also prescribed Prednisone. (AR 482; 507.) Plaintiff also required multiple injections to

relieve symptoms from an asthma flare-up. (AR 477.)

On August 22, 2017, Plaintiff's treating doctor, Dr. Achufusi, indicated: "The patient's chronic asthma is disabling, severe, and recurrent. He cannot sit for extended periods due to chronic radiation lower extremity pain caused by the patient's below-knee amputation and associated complications. The patient's right shoulder arthritis and internal fixation in his right radial/ulnar area limit his range of motion. The patient's chronic asthma and orthopedic limitations prohibit him from safely and reasonably maintaining employment even of a lighter nature." (AR 477-78; 487.)

On July 18, 2017, non-examining state agency medical consultant, Dr. M. Brill, opined Plaintiff's right below knee amputation, osteoarthritis of his right shoulder, and asthma, were severe impairments. (AR 104.) He opined Plaintiff's statements about the intensity, persistence, and limitations from his impairments were substantiated by the medical evidence alone. (AR 104.) Dr. Brill opined that due to Plaintiff's impairments, he could only lift/carry 20 pounds occasionally, 10 pounds frequently, sit 6 hours, and stand/walk 6 hours, in an 8-hour workday, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, crawl, and reach overhead with his right upper extremity, but never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, poorly ventilated areas, and, hazards. (AR 105-07.) On November 8, 2017, another non-examining state agency medical consultant, Dr. J. Sands, agreed with all of Dr. Brill's opinions. (AR 115-18.)

In his Decision, as noted above, the ALJ found Plaintiff had severe impairments of: asthma; disorders of the shoulder, including bursitis, rotator cuff tear, tendinopathy of the right biceps tendon, and osteoarthritis; and, below the knee amputation of the right lower extremity. (AR 27.)

He found Plaintiff had the residual functional capacity (RFC) to perform light work, including lift/carry 20 pounds occasionally, 10 pounds frequently, and sit, stand, and/or walk 6 hours in an 8-hour workday, occasionally climb ramps or stairs, stoop, crouch, and reach overhead with his dominant right upper extremity, but never climb ladders, ropes, or scaffolds, balance, kneel, crawl, or operate foot controls with his bilateral lower extremities. (AR 29.) Plaintiff must avoid concentrated exposure to extreme temperatures, humidity, pulmonary irritants such as dust, fumes, or gases, and hazards, such as unprotected heights, wet or slippery surfaces, and dangerous moving machinery. (AR 29.) Given those limitations, the ALJ found Plaintiff could not perform his past relevant work as a construction worker (AR 33) but could perform other work (AR 34) and he found Plaintiff not disabled (AR 35).

In support of remand, Plaintiff first argues that the ALJ's analysis of Plaintiff's subjective symptoms was legally insufficient. The ALJ found Plaintiff's statements about his symptoms and limitations "not entirely consistent" with the other evidence in the record. (AR 29.) Plaintiff contends that finding indicates the ALJ incorrectly believed statements could only be accepted if "entirely consistent" with the other evidence. However, Plaintiff notes, Plaintiff's statements need not be "entirely consistent" with all other evidence to be given weight. The ALJ must apply a preponderance standard (more likely than not), not a clear and convincing, or beyond a reasonable doubt, standard of review. *See* HALLEX I-3-3-4; 20 C.F.R. § 404.901; 20 C.F.R. § 404.953(a). The Regulation indicates the ALJ should take into account symptoms that are reasonably consistent with the record as a whole. 20 C.F.R. § 404.1529(c)(3) ("[A]ny symptom-related functional limitations and restrictions which you…report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account….);

20 C.F.R. § 404.1529(c)(4) ("Your symptoms... will be determined to diminish your capacity for basic work activities to the extent [they] can reasonably be accepted as consistent with the... evidence."). Courts in this District have found application of a more stringent standard than applied by the Regulations, when the ALJ found statements "not entirely consistent" with other evidence. *Ralston v. Saul*, 2019 WL 5558798, *4 (N.D. Ind., 2019); *Janet F. v. Saul*, 2020 WL 1443783, *5 (N.D. Ind., 2020); *Rosalyn L. v. Saul*, 2020 WL 614648, *6-7 (N.D. Ind., 2020); *Justin H. v. Berryhill*, 2019 WL 2417423, *12-13 (N.D. Ind., 2019); *John P. v. Saul*, 2019 WL 4072118, *11 (N.D. Ind., 2019); and *Murphy v. Berryhill*, 2019 WL 1123511, *15 (N.D. Ind., 2019) In *Ralston*, the Court explained:

> Like in *Minger*, the ALJ here used a stricter standard than what is stated under the applicable regulations. This might seem like only semantics to some, but I agree with the reasoning in *Minger* that it is a substantive difference. The regulation takes the testified-to symptoms at face value and then looks to see if they have a basis in the evidentiary record. In other words, "can reasonably accepted as consistent with" the evidentiary record. The standard used by the ALJ here, however, discounted and rejected Ralston's testimony because it was "not entirely consistent" with the underlying evidence. The ALJ seemed to require complete consistency or else Ralston's testimony must be disbelieved and discounted. That's not what the regulations require. Such a process effectively rules out the claimant's testimony as evidence because of any even minor inconsistency.

*Ralston*, 2019 WL 5558798, at 4, citing *Minger v. Berryhill*, 307 F.Supp.3d 865, 872 (N.D. Ill., 2018). Plaintiff argues that if the ALJ applied too strict a standard when analyzing Plaintiff's statements, he rejected statements which, analyzed under the correct standard, would not have been rejected. Further, Plaintiff argues, by finding statements "not entirely" consistent, the ALJ implied he credited some statements, without indicating which. SSR 16-3p25 ("We will explain which of an individual's symptoms we found consistent or inconsistent..."). Plaintiff concludes that the ALJ's failure renders meaningful judicial review impossible. *Martinez v. Astrue*, 630 F.3d 693,

9

694-95 (7th Cir. 2011); *Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010).

Plaintiff contends that the ALJ's subsequent analysis of the evidence, and that which he highlights, demonstrates he engaged in improper analysis using too strict a standard of review. Instead of evaluating the evidence as a whole, the ALJ selected minor statements from the evidence to undermine Plaintiff's reported symptoms and limits. For example, the ALJ noted that a single treatment note indicated he had been working in the woods, and found that undermined the severity of Plaintiff's symptoms as reported. (AR 32.) However, the treatment note does not provide any further information. (AR 549.) It is not clear what Plaintiff was actually doing in the woods, if it was for one day, how much of the day, or multiple days. At the hearing, Plaintiff testified he was not "working" in the woods but merely accompanied someone for a day to hunt mushrooms. (AR 50.) He said it was just something for him to do that day. (AR 50-51.) The ALJ indicated that such activity showed Plaintiff was more active than he alleged. (AR 32.) However, the ALJ solicited no other information about what mushroom hunting entailed, or the level of exertion that took.

Plaintiff argues that even if he was standing/ walking for a full day, that does not equate the ability to sustain full-time work and so does not undermine Plaintiff's reports that he could not sustain full time work activity, particularly the standing and walking required of light work. Plaintiff argues that discounting Plaintiff's statements, based on that single treatment note which Plaintiff testified was incorrect, demonstrates the ALJ was using the incorrect standard to review Plaintiff's statements, by discounting his statements for even minor inconsistencies. Courts have indicated that such nitpicking a claimant's statements is not a permissible analysis. *Stage v. Colvin*, 812 F.3d 1121, fn 1 (7th Cir. 2016) (indicating that the inconsistencies the ALJ noted were so

10

minor that they were immaterial); *Beardsley v. Colvin*, 758 F.3d 834, 838 (7th Cir. 2014) ("To the

extent we see any inconsistencies here, they do not rise above trivial matters..."). The ALJ was

also required to explain how Plaintiff's activity was inconsistent with his reported symptoms or

limitations. *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) and *Zurawski v. Halter*, 245

F.3d 881, 887-88 (7th Cir. 2000) (both indicating the ALJ must explain perceived inconsistencies).

However, the ALJ did neither. There is no requirement that a claimant be bed-ridden or

housebound, to be found disabled. *Sheets v. Astrue*, 2013 WL 425 91, *11 (N.D. Ind., 2013)

(indicating that participation in water aerobics and walking a miles a day does not mean that such

activities could be sustained at that level over the course of a regular, forty-our work week),

adopted in 2013 WL 425929 (N.D. Ind., Feb. 4, 2013), citing *Reddick v. Chater*, 157 F.3d 715,

722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal

lives in the face of their limitations.").

  Plaintiff further argues that the ALJ also relied on the objective evidence to discount

Plaintiff's statements. The ALJ noted that evidence showed some tenderness, limited range of

motion and strength in Plaintiff's right shoulder, but that examinations were unremarkable

otherwise. (AR 32.) However, there were more abnormalities than the ALJ suggests, including

significant pathology in Plaintiff's right shoulder shown on imaging (AR 466; 472), consistent with

right rotator cuff tear.  Plaintiff also had positive impingement tests and positive reinforcement

tests (AR 466; 468). Also significant, Plaintiff had a right below-knee amputation and beyond

complaining of pain, he had sores on his right leg, caused by the prosthesis. (AR 343; 352; 356;

360.). Plaintiff argues that the ALJ was not permitted to selectively discuss the evidence,

emphasizing normal findings, while ignoring abnormal findings. *Reinaas v. Saul*, 953 F.3d 461,

466 (7th Cir. 2020) (ALJ is not permitted to cherry-pick facts supporting his finding of disability and ignore evidence that point to disability), citing *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also, Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014) (ALJ's "…apparent selection of only facts from the record that supported her conclusion, while disregarding facts that undermined it, is an error in analysis that requires reversal."); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (the ALJ "must confront the evidence that does not support his conclusions and explain why it was rejected").

The ALJ cannot rely on the objective evidence without explaining why the evidence he relied upon outweighed other evidence which supported more significant limitations. *Zurawski*, 245 F.3d at 887 (ALJ "…made no attempt to explain why the other evidence in the record, which appears to favor Zurawski [ ], was overcome by the evidence on which she relied."). The Seventh Circuit has explained that pain is not objectively measurable and cannot be read off of a report or quantified upon examination. Thus, pain should not be evaluated by the objective evidence alone. *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of the pain experienced by a given individual can be 'read off' from a medical report."). In addition, Plaintiff's doctor noted Plaintiff might be suffering from phantom limb pain, which could not be objectively verifiable during a clinical examination in the office. (AR 331.)

Since Plaintiff's primary complaint was due to pain, even if the ALJ did not find the objective evidence alone substantiated Plaintiff's claims, Plaintiff argues that the ALJ was not permitted to discount Plaintiff's statements without also considering the regulatory factors and evidence regarding Plaintiff's pain. *Pope v. Shalala*, 998 F.2d 473, 486 (7th Cir. 1993) (ALJs

cannot rely solely, on a lack of objective medical evidence to undermine a claimant's complaints of pain, "[i]nstead we must evaluate all of the evidence, including medical evidence, [plaintiff's] claims, and the evidence of her daily activities, as well as the ALJ's observations of [plaintiff] herself, and determine if there is substantial evidence overall supporting the ALJ's decision.") 20 C.F.R. § 404.1529(c); SSR 16-3p; *Zurawski*, 245 F.3d at 887-88; *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). In the present case, Plaintiff contends that the ALJ did not discuss most of those factors, including precipitating factors, what Plaintiff did to avoid symptoms/pain, or Plaintiff's daily activities, and those factors which the ALJ did discuss he insufficiently or erroneously analyzed, which does not give substantial support to his decision.

The ALJ found Plaintiff's treatment had been conservative, that he improved with medications and injections, and that Plaintiff had elected not to undergo surgery on his right shoulder. (AR 32.) However, as Plaintiff points out, Plaintiff was prescribed significant pain medications, including Norco, a narcotic, Naproxen, Flexeril, and Tramadol. Taking numerous medications is objective evidence supporting Plaintiff's reported symptoms. *Stark v. Colvin*, 813 F.3d 684, 687-88 (7th Cir. 2016) (use of prescription medication is objective evidence that can support assertions about symptoms); *Stage*, 812 F.3d at 1125 (the ALJ should have considered claimant's use of strong narcotic medication to treat her pain). In addition, it is well-recognized that improvement in symptoms, with treatment, does not inherently undermine reported ongoing symptoms or limits because finding a claimant has "improved" or that treatment was "effective" in relieving some symptoms, does not quantify any improvement or effectiveness. Without evaluating how much one has improved, or considering that symptoms and limitations remained, finding improvement provides no logical bridge to the ALJ's conclusion to discount a claimants'

13

statements. *Murphy*, 759 F.3d at 819 (finding that improvement does "not give us an accurate description of [claimant's] true neurological state… The key is not whether one has improved…, but whether they have improved enough to meet the legal criteria of not being classified as disabled"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce.").

Further, Plaintiff argues, the ALJ cited no evidence Plaintiff's condition improved, rather than that he was able to relieve symptoms, for a time, with use of medications and/or injections. Thus Plaintiff concludes that without any evidence that Plaintiff's shoulder pathology or pain symptoms improved to the extent that Plaintiff was not as limited as he alleged, the ALJ did not build a logical bridge from any relief Plaintiff received to his conclusion that Plaintiff's statements should be discounted. *Tate v. Long Term Disability Plan for Salaried Employees of Champion*, 545 F.3d 555, 561 (7th Cir. 2008 ("Similarly, Dr. Center's general conclusion that medication has provided 'significant benefit' to Tate does not prove anything unless the improvement is shown to be connected in some rational way to her ability to work.").

The ALJ appears to discount Plaintiff's statements about the severity of his symptoms and his limitations because he opted to not yet undergo right shoulder surgery. (AR 32.) However, before discounting a claimant's statements based on failure to undergo a particular treatment, the ALJ must inquire into and consider the reasons offered for the claimant's decision. SSR 16-3p ("…we will consider and address reasons for not pursuing treatment that are pertinent to an individual's case."); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (ALJ should not draw inferences from lack of follow through on treatment unless she first explores explanations the claimant gives). In the present case,  Plaintiff testified that he could not get shoulder surgery

14

because he lives alone, only has one leg, and had no one to care for him or help him. (AR 64.) The ALJ made no inquiry into whether, after surgery, Plaintiff would be able to move around his house at all, given the lack of use of his right arm and right leg. The ALJ did not ask if Plaintiff would even be able to put on his prosthetic without using his right arm. Plaintiff contends that the ALJ should have considered Plaintiff's fear that he could not care for himself if he had right arm surgery, in light of all of his conditions. Plaintiff argus that it may have been more feasible for Plaintiff to manage his pain than to undergo surgery, due to his lack of help in his home. Plaintiff maintains that the ALJ was not permitted to ignore that testimony and should have indicated what he thought of it before discounting Plaintiff's statements for failure to have shoulder surgery. If Plaintiff's decision to not have surgery was based on his fear he could not fend for himself, not based on the severity of his symptoms, then the ALJ's decision to discount Plaintiff's statements based on his not undergoing surgery, was not supported by substantial evidence.

In response, the Commissioner cites to *Joyce W. v. Berryhill*, 2019 WL 2353500, *5 (N.D. Ind., 2019), which found that despite finding the claimant's statements "not entirely consistent", the ALJ had used the correct standard which was evidenced by the ALJ also providing the correct criteria, "reasonably acceptable", and the ALJ's additional analysis demonstrated the ALJ applied the correct standard of review. The Commissioner argues this case is similar to *Joyce W.* because the ALJ noted the correct standard earlier in the decision and the ALJ's analysis of Plaintiff's statements focused on whether Plaintiff's statements were "persuasive" and "consistent with or supported by" the evidence, not whether they were "entirely consistent" with the evidence. The Commissioner argues that, as such, the ALJ's finding that Plaintiff's statements were "entirely consistent" was merely a descriptor, not the evidentiary standard the ALJ applied. In *Joyce W.*,

the court indicated that it was a factual question about whether the ALJ applied the correct standard when they found a claimants' statements "not entirely consistent." The *Joyce W.* Court found that based on the facts of that case, the ALJ did not appear to have used the incorrect standard. Plaintiff argues that, here, the facts do not support that the ALJ applied the correct standard of review. Instead, Plaintiff argues, the ALJ's decision demonstrates he discounted Plaintiff's statements based on any inconsistency he found, no matter how minor, rather than determining whether Plaintiff's statements were more persuasive than not.

The Commissioner has failed to respond to the remainder of Plaintiff's arguments that were discussed above. The Commissioner's failure to address any of Plaintiff's arguments on those points renders them waived. *Cincinnati Ins. Co. v. E. Atl. Ins. Co.*, 260 F.3d 742, 747 (7th Cir. 2001) (failure to oppose an argument permits inference of acquiescence/waiver); *see also, Dogan v. Astrue*, 751 F.Supp.2d 1029, 1042 (N.D. Ind., 2010) (collecting Seventh Circuit district cases holding the Commissioner's failure to address one of a claimant's arguments amounts to waiver).

Accordingly, for the reasons discussed above, this Court finds that remand is warranted on the issue of the ALJ's analysis of Plaintiff's subjective statements.

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. As noted above, the ALJ found Plaintiff had the RFC to perform light work, including lift/carry 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk, 6 hours in an 8-hour workday, occasionally, climb ramps or stairs, stoop, crouch, and reach overhead with his dominant right upper extremity, but never climb ladders, ropes, or scaffolds, balance, kneel, crawl, or operate foot controls with his bilateral lower extremities, and Plaintiff must avoid concentrated exposure to extreme temperatures, humidity, pulmonary irritants such as dusts, fumes, and gases,

16

and exposure to hazards such as unprotected heights, wet or slippery surfaces, and dangerous moving machinery. (AR 29.)

The only opinions offered about what Plaintiff was capable of doing were from Plaintiff's treating physician, Dr. Achufusi, whose opinions the ALJ found not persuasive, and the non-examining state agency doctors, Drs. Brill and Sands, whose opinions the ALJ also found not persuasive. (AR 31-32.) The ALJ found the state agency doctors' opinions not consistent with or supported by the record, and indicated the updated records, received at the hearing level, after those doctors reviewed the file and offered opinions, indicated Plaintiff had continued to take prescription medication and was given injections in his right upper extremity. (AR 33.) The ALJ also found those doctors' opinions did not fully consider the extent of Plaintiff's pain and limits caused by Plaintiff's below knee amputation of his right leg. (AR 33.) As such, the ALJ indicated that he added limits, including that Plaintiff was unable to balance, kneel, crawl, or operate foot controls with his lower extremities, and, that Plaintiff could only frequently reach in all other directions with his right upper extremity. (AR 33.)

Plaintiff points out that, despite finding the state agency doctors' opinions not persuasive, the ALJ's decision mirrors those doctors' opinions on several points. Like those doctors, the ALJ found Plaintiff was able to stand and/or walk 6 hours, and to sit 6 hours, in an 8-hour workday. Like those doctors, the ALJ also found Plaintiff could occasionally climb ramps and stairs, occasionally stoop, occasionally crouch, but could never climb ladders, ropes, or scaffolds. (AR 29, compared with AR 105; 116.) Plaintiff argues that it is illogical for the ALJ to both reject the state agency doctors' opinions for not fully considering the relevant evidence to reach those opinions, but, also rely on them to form his RFC findings. *Mazzuca v. Colvin*, 2013 WL 1343344,

*9 (N.D. Ill., 2013) ("An ALJ cannot logically reject a treating physician's report and then rely on it to support the RFC findings."); *see also, Parker*, 597 F.3d at 924-25 (the ALJ's decision cannot be upheld with significant contradictory conclusions by the ALJ). *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (ALJ may not adopt portions of an opinions without explaining why he rejects the remainder).

Plaintiff contends that if the ALJ did not rely on the state agency doctors' opinions, and also did not find Plaintiff's treating doctor's opinions persuasive and did not rely on those, the ALJ rejected every opinion in the record, which created an evidentiary deficit. *Suide v. Astrue*, 371 Fed. Appx. 684, 690 (7th Cir. 2010) (when ALJ rejected all opinions he created an evidentiary deficit and was required to obtain evidence to fill that void). Without any opinion to rely upon, the ALJ had to point to other record evidence to support the limitations he assessed. *Id.; see also Bjornson v. Astrue*, 671 F.3d 640, 649 (7th Cir. 2012) (ALJ must set forth a supportable record basis for the functional capacity finding); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir.2005) ("ALJ's failure to explain how he arrived at his exertional conclusions under SSR 96-8p is in itself sufficient to warrant reversal of the ALJ's decision"). However, in the present case, the ALJ's decision does not provide any explanation to trace his path of reasoning. He did not indicate what evidence he relied on, and did not explain how the other evidence in the record led him to the limits he assessed. The ALJ indicated that the state agency doctors' opinion that Plaintiff could occasionally reach overhead with his right upper extremity was not persuasive because they had not seen evidence that Plaintiff continued to receive and take pain medications and injections in his right shoulder. (AR 33.) Then, inexplicably, the ALJ found Plaintiff could frequently reach overhead with his right upper extremity. Occasionally means "from very little up

to one-third of the time." Frequent means "from one-third to two-thirds of the time." SSR 83-10.

Plaintiff argues that the ALJ should have explained why Plaintiff continuing to receive injections and strong narcotic pain medications meant he could more often reach overhead with his right arm. There is no opinion in the record or indication in the medical evidence that Plaintiff was able to reach overhead frequently, given his significant pathology in his right shoulder. *Garcia v. Colvin*, 741 F.3d 758, 762 (7th Cir. 2013) ("No evidence supports this re-conclusion. No physician testified—no medical records [re]vealed—that Garcia has the residual functional capacity ascribed to him by the administrative law judge."). Significantly, if the ALJ found Plaintiff could not frequently reach with both arms, that could have eliminated all of the jobs the vocational testified, and the ALJ found, Plaintiff could perform. Additionally, there was evidence Plaintiff had left shoulder pain as well (AR 316; 339; 561) and was diagnosed with osteoarthritis of the left shoulder (AR 316). Plaintiff also testified he had pain in both his left and right shoulder. (AR 62-63.) The ALJ did not discuss Plaintiff's left shoulder or explain why he included no limits using the left upper extremity. If the ALJ found the evidence too deficient for him to determine Plaintiff's limitations, he had a duty to develop the record. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Richards v. Astrue*, 370 Fed. Appx. 727, 731 (7th Cir. 2010) (the ALJ may not draw conclusions based on an "undeveloped record"). That includes recognizing when evidence is deficient and procuring additional evidence. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) ("If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record...").

Plaintiff points out that the ALJ's failure to explain how he arrived at his RFC limits was not harmless because had he found Plaintiff not able to stand/walk 6 hours in an 8-hour workday,

that would have limited Plaintiff to sedentary work. If Plaintiff were limited to sedentary work, he would have been disabled pursuant to Medical-Vocational Rule 201.14 because Plaintiff was closely approaching advanced age (54), had a high school education, his past relevant work as a construction worker was semi-skilled, but no transferrable skills to sedentary work, per the vocational expert's testimony (AR 69).

In response, the Commissioner has not addressed any of Plaintiff's arguments. Rather, the Commissioner merely argues that the ALJ grounded his findings in an extensive consideration of the evidence. The Commissioner's failure to address any of Plaintiff's specific arguments renders them waived. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

This Court finds, for the reasons discussed above, that the ALJ's RFC assessment is not supported by substantial evidence, requiring a remand.

Next, Plaintiff argues that the ALJ's evaluation of his treating doctor's opinions was legally insufficient and finding that those opinions were not persuasive was not supported by substantial evidence. Plaintiff's treating doctor, Dr. Achufusi, indicated: "The patient's chronic asthma is disabling, severe, and recurrent. He cannot sit for extended periods due to chronic radiation lower extremity pain caused by the patient's below-knee amputation and associated complications. The patient's right shoulder arthritis and internal fixation in his right radial/ulnar area limit his range of motion. The patient's chronic asthma and orthopedic limitations prohibit him from safely and reasonably maintaining employment even of a lighter nature." (AR 477-78; 487.) The ALJ found those opinions "not persuasive." (AR 31.)

When a treating doctor provides opinions about a claimant's impairments or resulting functional limitations, the ALJ must consider those opinions, as well as any other opinions offered,

in light of various regulatory factors, and determine the weight opinions are entitled. 20 C.F.R. §
404.1520(c). The most important factors are consistency and supportability of the opinions. 20
C.F.R. § 404.1520(c)(2).

The ALJ found that the results of the pulmonary function tests did not reach listing level.
(AR 31.) Plaintiff argues that even though his asthma, alone, did not reach level contemplated of
the Commissioner's listing to qualify Plaintiff as presumptively disabled, that does not mean
Plaintiff's asthma symptoms did not limit his ability to perform basic work-related tasks. The ALJ,
himself, found asthma was a severe impairment. (AR 27.) That means, by definition, the ALJ
found asthma more than minimally limited Plaintiff's ability to perform basic work-related tasks.
20 C.F.R. § 404.1520(c) ("If you do not have an impairment or combination of impairments which
significantly limits your physical or mental ability to do basic work activities, we will find that you
do not have a severe impairment…"); 20 C.F.R. § 404.1522(a) ("An impairment or combination
of impairments is not severe if it does not significantly limit your physical or mental ability to do
basic work activities.").

 Dr. Achufusi opined that Plaintiff's asthma, combined with his orthopedic conditions,
prohibited Plaintiff from maintaining employment. (AR 477-78; 487.) Dr. Achufusi did not opine
Plaintiff's asthma, alone, met the Listing level of severity and, thus, his opinions were not
inconsistent with Plaintiff's asthma not meeting that Listing. Similarly, the ALJ found that Plaintiff
had not been referred to a specialist for asthma or required emergency room visits for pulmonary
distress. (AR 31.) However, those are requirements of the Listing, and Dr. Achufusi neither
opined Plaintiff's asthma was of Listing severity or that Plaintiff had required emergency room
visits for asthma. As such, his opinions are not undermined or inconsistent with lack of such care.

The ALJ also found that Dr. Achufusi's opinions were inconsistent with the doctor's own treatment notes which showed mostly normal and unremarkable examination findings. (AR 31.) Similarly, the ALJ found that notes from Plaintiff's orthopedic surgeon, who treated Plaintiff's right shoulder conditions, noted Plaintiff had normal gait, limited range of motion and strength in his right shoulder, and that symptoms could be managed conservatively. (AR 31.) However, Dr. Fielder, the orthopedic surgeon, also noted positive impingement tests and positive reinforcement tests. (AR 466; 468.) He also noted numerous abnormalities on x-ray and MRI, including subacromial spurring, a large full thickness rotator cuff tear involving the supraspinatus muscle with tendon retraction and mild fatty infiltration, atrophy of the rotator cuff muscles, Os acromiale, and severe tendinopathy involving the long head of the biceps tendon. (AR 466; 472.)

Plaintiff points out that the ALJ did not explain his reliance on clinical examination findings of reduced range of motion and strength, over the other examination findings and significant abnormalities noted by imaging studies. *Zurawski*, 245 F.3d at 887 (ALJ "…made no attempt to explain why the other evidence in the record, which appears to favor Zurawski [ ], was overcome by the evidence on which she relied."). Additionally, regarding Plaintiff's right shoulder, Dr. Achufusi opined that Plaintiff had limited range of motion. (AR 477-78; 487.) That is entirely consistent with both Dr. Achufusi's treatment notes and with Dr. Fielder's notes. (AR 310; 314; 466; 468.) Further, regarding Plaintiff's right below-knee amputation, the ALJ indicated that Plaintiff was limited due to pain. (AR 477-78; 487.) A claimant's reports of pain and limitations resulting from pain cannot be discredited based on objective evidence, or lack of objective evidence, alone. *Pope*, 998 F.2d at 486; *see also, Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (ALJ may not discredit a claimant's testimony about their symptoms solely based on the

objective medical evidence).

The ALJ also noted that Plaintiff was sometimes able to walk with a normal gait. (AR 31.) However, Plaintiff indicated he was not able to walk normally, and that he was having back and ankle pain, due to his abnormal gait, caused by pain in his amputated leg and from his prosthesis. (AR 316; 339.) The ALJ was not permitted to ignore that evidence. *Scrogham*, 765 F.3d at 699; *Indoranto*, 374 F.3d at 474. Further, that Plaintiff was observed walking normally in doctors' offices does not mean he was able to walk further, or longer than that, and certainly does not undermine Dr. Achufusi's opinion that Plaintiff could not manage even light work (which would require standing and/or walking up to 6 hours in an 8-hour workday). *Scott*, 647 F.3d at 740 (finding "brief excursion" of 50' around doctor's office did not support finding claimant could stand for 6 hours).

The ALJ found Dr. Achufusi's opinions not persuasive because Plaintiff was able to engage in some work activity. (AR 31.) However, Plaintiff testified he did not engage in any work activity. He testified that he did not go to Kentucky for work, but, instead, to visit his father, and that his doctor must have misunderstood him. (AR 50.) He testified that he did not do work in the woods, but, that he went mushroom hunting with a friend for something to do that day. (AR 50-51.) Notably, Dr. Achufusi opined Plaintiff could not "safely" and "reasonably" "maintain[ ] employment". (AR 477-478; 487.) The ability to perform some work activity, or some daily activities, is not comparable to the ability to maintain competitive employment. *Goins v. Colvin*, 764 F.3d 677, 679 (7th Cir. 2014) (that someone works is not sufficient ground to conclude they are not disabled, particularly when it is part-time work, because even those who are disabled may cope with their impairments and continue working for various reasons, including out of necessity),

23

citing *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012). In the same vein, even if Plaintiff was able to perform some work activity, at times, that is not inconsistent with Dr. Achufusi's opinion that Plaintiff could not maintain employment, due to his impairments.

The ALJ also indicated that Dr. Achufusi opined Plaintiff was disabled, and that the issue of disability is reserved to the Commissioner. (AR 31.) However, that the doctor offers an opinion on the issue of disability does not support automatically discounting that opinion. The Commissioner's rules merely indicate that such an opinion is not dispositive of the issue of disability. However, the ALJ must still consider such an opinion, in light of the relevant regulatory factors, to determine the weight it is entitled. *Bjornson*, 671 F.3d at 647-48; *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013); *Hamilton v. Colvin*, 525 Fed. Appx. 433, 439 (7th Cir. 2013).

In response, the Commissioner notes the ALJ found that pulmonary function tests did not reflect listing level severity asthma and that Plaintiff was not referred to a specialist for asthma and was able to manage his symptoms with an inhaler. However, the Commissioner did not address Plaintiff's argument that Plaintiff's asthma alone, not meeting listing level severity, did not undermine Dr. Achufusi's opinions because the doctor did not opine Plaintiff's asthma met that severity alone, or that Plaintiff was unable to work due to asthma alone. As such, that Plaintiff's asthma alone was not disabling, does not undermine Dr. Achufusi's opinions and does not support the ALJ's decision to discount the doctor's opinion. The Commissioner waived the opportunity to address that argument. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

The Commissioner argues the ALJ discounted Dr. Achufusi's opinion because Dr. Achufusi's treatment notes were unremarkable and Plaintiff's orthopedic surgeon noted that Plaintiff walked with a normal gait and managed his symptoms with conservative treatment.

However, the Commissioner did not address Plaintiff's argument that treatment notes also showed positive impingement signs and reinforcement tests and numerous abnormalities on MRI and that the ALJ did not explain his reliance on some clinical findings over the other, abnormal, evidence. Plaintiff also noted that Dr. Achufusi's opinion that Plaintiff had limited range of motion in his right shoulder was consistent with both doctors' treatment notes. Plaintiff argues that Dr. Achufusi limited Plaintiff due to pain Plaintiff suffered due to his right below knee amputation, and that pain could not be objectively measured from the objective evidence. Plaintiff also argues that the ALJ failed to consider Plaintiff's report that he could not walk normally and that he was having back and ankle pain due to his abnormal gait, which was caused by pain from his prosthesis of his amputated leg. Plaintiff also argues that Plaintiff's ability to walk normally for a short distance in a doctors' office does not mean that Plaintiff could walk farther or for a sustained period of time, and so, does not undermine Dr. Achufusi's opinion that Plaintiff could not perform light work (stand/walk up to 6 hours in an 8-hour workday). The Commissioner addressed none of these arguments and has waived them. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

The Commissioner argues the ALJ discounted Dr. Achufusi's opinions because Plaintiff was able to engage in some work activity. However, as Plaintiff argues, he testified he did not engage in work activity and the ALJ must have misunderstood him, that his "work" in the woods was actually mushroom hunting, for a day, with a friend, for something to do, that the ALJ was not permitted to ignore that testimony, and that since the ALJ elicited no additional information about Plaintiff's activity, the ALJ's conclusion that such activity undermined Dr. Achufusi's opinions, was not supported by substantial evidence. The Commissioner did not address these

arguments and waived them. *Cincinnati Ins. Co.*, 260 F.3d at 747; *Dogan*, 751 F.Supp.2d at 1042.

This Court finds that the ALJ's evaluation of Dr. Achufusi's opinions was insufficient and not supported by substantial evidence.  Thus, remand is warranted on this issue also.

<u>Conclusion</u>

On the basis of the foregoing, the decision of the Commissioner is hereby REVERSED AND REMANDED for further proceedings consistent with this Opinion.


Entered: January 25, 2021.


s/ William C.  Lee
William C. Lee, Judge
United States District Court

26